IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


WESLEY XAVIER BROWN,

     Plaintiff,

vs.                                                                 Civ. No. 13-0549 MCA/SMV

CUDD PUMPING SERVICES, INC.,

     Defendant.

## MEMORANDUM OPINION AND ORDER

This case comes before the Court upon Defendant's *Motion for Summary Judgment* [Doc. 39]. The Court has considered the parties' written submissions, the record in this case, and the applicable law, and is otherwise fully advised.  The Motion is denied-in-part and granted-in-part.

This is an action seeking damages for unlawful discrimination on the basis of disability and race.  Plaintiff, an African-American male with a pacemaker, claims that he was discriminated against on the basis of disability when, following his return from successful surgical implantation of a pacemaker:  (1) he was not permitted to return to his prior job as an equipment operator and (2) was subjected to harassment by his co-workers. Plaintiff also alleges that he was subjected to race discrimination in the form of harassment by his co-workers.

**Summary Judgment Standards**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

A*damson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations. *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Disability Discrimination**

To establish a claim under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. 12101, *et seq.*, Plaintiff must prove that (1) he was a disabled person as defined by the ADAAA (or was perceived as such by his employer); (2) he was qualified to perform the essential functions of his job; and (3) he was subjected to an adverse employment action because of his disability (or perceived disability). *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015); *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013). The Court concludes that

Plaintiff has demonstrated genuine disputes of material as to each element of his disability claim.

Defendant hired Plaintiff in late December 2011 as an equipment operator. This position required some driving and considerable physical labor out in the oilfield. Plaintiff enjoyed working in the oilfield and benefitted financially from the opportunity to earn substantial amounts of overtime pay. On April 4, 2012, Plaintiff experienced light-headedness and felt unwell. Plaintiff took sick leave on April 5, 2012. He made an appointment for a medical checkup on Monday, April 9, 2012. On April 9, 2012, Plaintiff learned from his doctor that he suffered from an abnormally low heart rate. Plaintiff's doctor referred Plaintiff to a cardiologist. On April 10, 2012, Plaintiff was examined by a cardiologist, who recommended that Plaintiff have a pacemaker implanted as soon as possible. Plaintiff's cardiologist scheduled Plaintiff for pacemaker surgery on April 18, 2012. On April 11, 2012 Plaintiff asked his supervisor, Vince Uriegas, for medical leave so that he could have his pacemaker surgery. Uriegas referred Defendant to Defendant's district manager, Paul Navarrete. Navarrete offered Plaintiff an unpaid leave of absence during which Plaintiff's health insurance would remain in effect. [Doc. 39-3 at 2] Plaintiff was "overjoyed" that Navarrete had shown compassion and consideration for Plaintiff. Plaintiff took approximately two weeks leave. On May 1, 2012, Plaintiff's cardiologist authorized Plaintiff to return to work with no restrictions. Plaintiff reported to his field supervisor around midnight on the evening of May 6, 2012. The next morning, Uriegas, upon learning that Plaintiff had returned to the field, called Plaintiff in from the oil field and assigned Plaintiff to light duty staffing the break room. Uriegas also directed

Plaintiff to undergo a DOT physical.  Plaintiff appeared for his physical on May 7, 2012. The examining physician deemed Plaintiff  able to perform his essential job functions. Thus, as of May 7, 2012, Plaintiff had been cleared by both his cardiologist and Defendant's physician.   Plaintiff's duties in the break room consisted of uninteresting make-work, and although Defendant paid Plaintiff the same hourly wage, Plaintiff did not have the same opportunity to earn overtime that he had as an equipment operator assigned to the oil field.  Plaintiff called Defendant's EEO hotline to complaint about his assignment.[1]  Despite having been cleared by his cardiologist and by Defendant's physician, Plaintiff was not released from light duty until May 21, 2012, when he was assigned to the communications vehicle ("TMV"). Within a day or so Plaintiff was transferred from the TMV to sand hulks. Plaintiff remained a sand hulk operator until June 26, 2012, when Plaintiff resigned.

Defendant argues that "following his pacemaker surgery," Plaintiff is not disabled, the first element of his claim. [Doc. 39 at 10]  This argument overlooks 42 U.S.C. § 12102(4)(E)(i).  Pursuant to this provision, the determination of whether an impairment substantially limits a major life activity is made without regard to the ameliorative effects of medical equipment or appliances.   The Court concludes that Plaintiff's pacemaker easily fits within the category of a medical appliance.  By operation of § 12102(2)(B), a major life activity for purposes of  §12102(1)'s definition of disability includes the operation of a major bodily function, including the circulatory function. Without his

---

[1]It is not clear from the record precisely when during the three weeks he was assigned to the break room that Defendant called the hotline.

pacemaker he suffers from a deficit in his circulatory function—a life threateningly low heart rate. [Doc. 39-2 at 3]

Alternatively, Plaintiff is disabled because he was perceived as disabled by Defendant's Navarrete, who declined to return Plaintiff to his original job because he "just wanted to take care of Mr. Brown, make sure he didn't have any strenuous job functions." [Doc. 41-2 at 12]

The Court understands Defendant to have conceded the second element of Plaintiff's ADAAA claim—*i.e.*, that with his pacemaker installed, Plaintiff was qualified for his original job as an equipment operator in that he could "perform the essential functions of the employment position that he [held]." 42 U.S.C. § 12111(a)(8). The record indisputably establishes that Defendant's cardiologist released him for work with no restrictions and that Plaintiff passed his DOT medical exam.

Finally, the Court concludes that Plaintiff has established a genuine dispute of fact as to whether he was subjected to an adverse employment action on the basis of his disability. After Plaintiff returned from his medical leave, he was assigned to light duties in the break room, even after he had been cleared by his own cardiologist to return to work with no restrictions and had passed his DOT physical. Plaintiff's job in the break room was essentially make-work, and he was deprived of the opportunity to earn the same substantial amount of overtime as in his original position as an equipment operator. *See Reinhardt v. Albuquerque Public Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (citing *Bergeron v. Cabral*, 560 F.3d 1, 9-10 (1st. Cir. 2009)); *Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (holding that reduction of

overtime from $15,000 to $20,000 annually to $1200 to $2000 annually constituted adverse employment activity); *Johnson v. Manpower Professional Services, Inc.*, 442 Fed. App'x 977, 982 (5th Cir. 2011) ("Denial of overtime pay is an adverse employment action because it relates to [plaintiff's] compensation."); *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) ("Depending on the type of work, overtime can be a significant and recurring part of an employee's total earnings. . . ."). On this evidence a reasonable jury could find that Plaintiff experienced an adverse employment action.

Plaintiff also claims that he was subjected to a hostile work environment because of his pacemaker. Plaintiff testified that after his pacemaker was implanted, his co-worker Kenny would taunt him by asking if Plaintiff needed a "jump start" [Doc. 41-1 at 16] and his co-worker Ziggy would taunt Plaintiff by referring to Plaintiff as the "Energizer Bunny." [Doc. 41-10 at 1] Plaintiff conceded during his deposition that, although he found Kenny and Ziggy's remarks offensive, he did not tell them that he did not appreciate the teasing. [Doc. 41-1 at 17] Plaintiff also conceded that the "jump start" and "Energizer Bunny" comments were the only objectionable references to his pacemaker. [Doc. 41-1 at 17]

To be actionable, harassment must be "so 'severe or pervasive' as to '"alter the conditions of [the victim's] employment and create an abusive working environment."'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (discussing standard under Title VII); *Mendia v. Hawker Beechcraft Corp.*, 303 Fed. App'x 622, 625 (10th Cir. 2008) (noting absence of evidence of severe and pervasive intimidation, ridicule or insult directed at plaintiff's alleged disability); *see also* Lindemann *et al.*, I *Employment*

6

*Discrimination Law*, 925-26 (4th ed.).  "[T]he run-of-the-mill boorish,  juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a . . . hostile work environment claim."  *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (upholding dismissal on summary judgment of sexual-harassment based hostile work environment claim).

The comments co-workers directed at Plaintiff concerning his pacemaker are not inherently invidious.  *Cf. Hernandez v. Valley View Hosp. Assoc.*, 684 F.3d 950, 958 (10th Cir. 2012) (concluding that Latina plaintiff's evidence, including racially derogative jokes and comments, provided sufficient evidence to withstand summary judgment on hostile work environment claim); *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 795 (10th Cir. 2007) (noting evidence that coworkers angrily called female employee "bitch," or angrily told her to "fuck you bitch").  The Court concludes that a hypothetical reasonable jury necessarily would conclude that the taunts about his pacemaker endured by Plaintiff amounted to no more than the type of "boorish,  juvenile, or annoying" behavior that is not actionable.

Lastly, Plaintiff relies on evidence that he was ordered to drive a truck without a CB radio and air conditioning and was not assisted by his co-worker Horacio after Plaintiff's truck broke down by the side of the highway.  Plaintiff has not come forward with any evidence that would permit a reasonable jury to attribute these actions to animus against Plaintiff on the basis of his disability.

**Racial Discrimination**

Plaintiff alleges that he was subjected to a racially hostile workplace. As noted above, to be actionable, harassment must be so severe or pervasive as to have altered the conditions of Plaintiff's employment and have created an abusive working environment. Plaintiff relies on evidence that on one occasion a safety supervisor threatened to "slap the black off " Plaintiff [Doc. 41-1 at 15, 16]; that on another occasion Plaintiff heard co-workers using the Spanish words "mayate," which can be an offensive term for a black person, and "negrito" [Doc. 41-1 at 15]; that on April 4, 2012, a trainee supervisor, Alonzo, made Plaintiff do Alonzo's job when Plaintiff should have been permitted cab time to sleep [Doc. 41-1 at 7]; that later on April 4, 2012, a supervisor, Kenneth Lopez, disparaged Plaintiff and his wife in front of other employees [Doc. 41-1 at 8]; that Lopez used the words "negrito" and "nigger" in referring to Plaintiff [Doc. 41-10]; and that Lopez overworked Plaintiff.

The Court begins by noting that "general harassment" not based on the plaintiff's race, gender or other protected status is not actionable. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1995).

Some of the conduct described by Plaintiff did not happen in circumstances giving rise to an inference that Plaintiff was mistreated due to race-based animus. [Doc. 41-1 at 7 (Alonzo makes Plaintiff do Alonzo's job); *id.* at 14 (badgering by Alonzo in TMV truck); *id.* at 19 (complaints about Juan Flores' "his way or the highway" attitude); *id.* at 20-21 (complaint about Horacio abandoning him in 110 degree weather)] The Court recognizes that facially race-neutral conduct can be considered in the totality of the circumstances in deciding whether Plaintiff was subjected to discriminatory conditions, provided that there

is evidence that would allow a reasonable jury to infer animus based on Defendant's race. *See Chavez v. New Mexico*, 397 F.3d 826, 837 (10th Cir. 2005).  Thus, based on evidence that Lopez used racial epithets in speaking of Plaintiff, a jury might infer that Lopez's treatment of Plaintiff—disparaging Plaintiff and his wife and overworking Plaintiff —was racially motivated.  *Chavez*, 397 F.3d at 837 (concluding that evidence of incidents of gender-based misconduct by male supervisor  permitted inference that other inappropriate, but facially gender-neutral  behavior toward female workers was motivated by gender). However, Plaintiff has no evidence that would permit a reasonable jury to attribute Lopez's race-based animus to other supervisors or to co-workers.  *Id.*  Thus, with respect to Plaintiff's complaints about Alonzo, Flores, and Horacio, the Court concludes that Plaintiff has failed to come forward with evidence that would permit a reasonable jury to attribute racial animus to these actors:  there is a complete absence of such evidence.

Plaintiff's claim that Lopez overworked Plaintiff, fails for a different reason. As noted above, a hostile work environment claim is analyzed under a dual objective-subjective standard.  Plaintiff's evidence is limited to his subjective belief that he was overworked.  Plaintiff has not described how he was overworked or otherwise come forward with evidence that would allow a jury to find that Plaintiff's subjective belief that he was being overworked was objectively reasonable.  Under the dual objective-subjective standard for an hostile work environment, evidence of Plaintiff's subjective belief  is insufficient without evidence that his belief was objectively reasonable.

With non-actionable conduct set aside, Plaintiff's claim of a racially hostile work environment depends on evidence that  on one occasion he overheard other employees

using Spanish racial epithets, that on another occasion a supervisor threatened to "slap the black off" Plaintiff; and that Lopez disparaged Plaintiff and Plaintiff's wife in front of other employees.   There is no dispute that Plaintiff did not complain to his co-workers or invoke Defendant's EEO policy concerning these incidents.  The Court concludes that Plaintiff's evidence, viewed in the light most favorable to Plaintiff, is insufficient to permit a reasonable jury to find that  Plaintiff was subjected to harassment on the basis of race that was so severe or pervasive as to have altered the conditions of Plaintiff's employment and have created an abusive working environment.

**Constructive Discharge**

The incident during which Horacio drove by Plaintiff's disabled truck without stopping to assist Plaintiff occurred during the evening of June 26, 2012.   Plaintiff arrived back at Defendant's premises around 12:00 a.m. on June 27, 2012. [Doc. 41-1 at 20] Based on his perception that he had been mistreated and that Defendant did not care about his welfare, Plaintiff quit his job at 8:00 a.m. on the morning of June 27, 2012.  Plaintiff did not formally tender his resignation; he simply stopped showing up for work.

"Constructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Green v. Donahoe*, 760 F.3d 1135, 1142 (10th Cir. 2014) (quoting *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013)).

Plaintiff's evidence in support of his constructive discharge claim is the same evidence he offers in support of his hostile work environment claim, coupled with evidence that he was unlawfully assigned to the break room.  For the reasons  noted

10

above, certain conduct is not actionable.  Thus, Plaintiff's showing comprises the following evidence: (1) evidence that he was assigned to the break room for three weeks following his pacemaker surgery; (2) evidence that he complained of the break room assignment, but that his complaints were ignored [Doc. 41-6 at 6]; (3) evidence that on one occasion he overheard his coworkers use the Spanish racial epithet "mayate"; (4) evidence that on one occasion a supervisor threated to "slap the black off" Plaintiff; (5) evidence that on one occasion supervisor Lopez disparaged Plaintiff and his wife and (6) evidence that Kenny and Ziggy teased Plaintiff about his pacemaker.[2]  This conduct occurred over an approximately seven-month period.  There is no evidence that Plaintiff complained about the conduct listed under (3), (4), (5), and (6) to the persons involved or that he used Defendant's EEO process to obtain relief from the conduct.

This evidence is insufficient to permit a reasonable jury to find that Plaintiff was subjected to conditions so intolerable that Plaintiff had no option but to resign.  In reaching this conclusion, the Court does not doubt that a jury could find that Plaintiff subjectively felt that he had been mistreated.  But in the context of constructive discharge, whether conditions are rendered intolerable due to discrimination is measured solely by an objective standard.  *Strickland v. United Parcel Serv.*, 555 F.3d 1224, 1228 (10th Cir. 2009).  A court (or jury) gives no weight to the employee's subjective belief, "no matter how sincerely held."  *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014) (quoting *Torrech-Hernandez v. Gen Elec. Co.*, 519 F.3d 41, 52 (1st Cir. 2008)).

---

[2] The Court assumes without deciding that a constructive discharge claim can be made out by aggregating evidence of violations of Title VII and the ADAAA.

**Failure to Mitigate Damages**

The Court's conclusion that Plaintiff was not constructively discharged renders moot the issue of mitigation of damages. *See Price v. American Eagle Airlines, Inc.*, 2014 WL 7338882 *11 (W.D. La. 2014); *Gingold v. Bon Secours Charity Health System*, 768 F. Supp. 2d 537, 546 (S.D. N.Y. 2011).

**Conclusion**

The Court will deny Defendant's motion for summary judgment as to Plaintiff's claim that he was transferred to the break room for three weeks following his return from pacemaker surgery because of Defendant's perception that Plaintiff's heart condition prevented Plaintiff from resuming his prior job. The Court will grant Defendant's motion for summary judgment as to Plaintiff's claims of a hostile work environment and constructive discharge. In view of the Court's dismissal of Plaintiff's constructive discharge claim, the Court denies as moot Defendant's motion for summary judgment on the issue of failure to mitigate damages.

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant's *Motion for Summary Judgment* [Doc. 39] is **denied in part** and **granted in part**.

So ordered this 17th day of August, 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge